## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

EVERDAYS, INC.

       *Plaintiff*,

                                  Case No. _____

v.

                                    Hon. _____

EVERHERE INC.

       *Defendant*.

_____

## <u>COMPLAINT AND JURY DEMAND</u>

Plaintiff EVERDAYS, INC. ("Everdays" or "Plaintiff"), by its attorneys Honigman LLP, brings this Complaint against Defendant EVERHERE INC. ("Everhere" or "Defendant") for violations of 15 U.S.C. §§ 1114, 1125(a), and 1125(d), unfair competition under Michigan state common law, and the Michigan Consumer Protection Act.  As the bases for its Complaint, Everdays states as follows:

## <u>THE PARTIES</u>

1.    Plaintiff Everdays, Inc. is a Michigan corporation having a business office located at 320 Martin Street, Suite 140, Birmingham, Michigan, 48009.

2.    On information and belief, Defendant Everhere Inc. is a corporation

organized under the laws of Canada located at 1020 Rue Bouvier, Suite 400, Quebec QC G2K 0H3, Canada.

## JURISDICTION AND VENUE

3.       This action arises under the laws of the United States, Title 15 of the United States Code, 15 U.S.C. §§ 1114, 1125(a), and 1125(d), the common law of unfair competition in the State of Michigan, and the Michigan Consumer Protection Act, MCL 445.903.

4.       This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332(a) and 1338(b).  This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

5.       This Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(2) because Defendant, a foreign corporation, is not subject to jurisdiction in any state's courts of general jurisdiction.  Alternatively, this Court's exercise of personal jurisdiction over Defendant is proper because Defendant has engaged in intentional acts described herein, which are directed at Michigan consumers and that harm Plaintiff, a Michigan corporation.

6.       Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1391(d).

## FACTS ENTITLING EVERDAYS TO RELIEF

### Everdays and its Services

7.      Everdays was incorporated on February 6, 2017 and registered the domain name www.everdays.com on January 26, 2017.

8.      It is Everdays' mission to help grieving families efficiently and expeditiously reach friends, family, and community with news of the passing of a loved one and details of the funeral and/or memorial services.

9.      Everdays' services provide an alternative to passive and traditional newspaper obituaries by providing a dynamic system and social networking platform to actively and quickly notify friends, family, and the community about a death.





*See* https://everdays.com/families.

10.    Everdays does this through an online announcement Software as a Service (SAAS) platform, which includes both web-based and mobile application products.

11.    The primary channel for Everdays' distribution is through funeral homes.  Everdays offers its service to funeral homes for their client-families, enabling funeral homes to make it easier for their grieving clients to notify and update family, friends, and other contacts of funeral arrangements and services.

When You Partner With Everdays



**Your funeral home is at the center of the community**

Join thousands of directors providing Everdays to their client families who ensure their home is in the center of every Announcement, where communities range from 100 to 10,000+ people.



**Grow your client family's community of support**

Everdays creates a space for friends and family to privately message condolences, share photo and video memories, stay up-to-date on events and be there for loved ones.



**Free Announcements for your home and families, always**

Everdays has brought together over 1.8 million family and friends during times of loss. Join other funeral directors that help their client families quickly reach the ones who matter most.

*See* https://everdays.com/partners.

12.     Everdays has business relationships with funeral homes across the United States, including in Michigan.

13.     Everdays also provides a free mobile application ("App"), which provides individual users with up-to-the minute details about funeral services, including GPS directions.

14.     Everdays' App allows its users—whether an individual or funeral home—to create, edit, and share memorial announcements.  Users can use the App to build a social network and create perpetual online memorials—sharing information, stories, pictures, and videos about their deceased loved one.

15.     The App has chat capabilities that allow users to send personalized messages to the decedent's contacts.  It also provides an automated tool to assist in crafting thoughtful messages.

5

16.    Additionally, Everdays maintains a blog entitled "Moments," which includes content concerning—amongst other things—the grieving process, estate/funeral planning, and general well-being.



*See* https://everdays.com/blog/.

17.    Everdays maintains a substantial social media presence, with pages on Facebook, Twitter, Instagram, and Linkedin, reaching customers and consumers across the United States.

18.    Since its launch, Everdays has connected over 2.5 million families and friends, and is on pace to serve 10% of the families whose loved ones pass each year in the United States.

19.    Everdays is rapidly growing, and it currently employs 30 people in southeastern Michigan.

20.     In February of 2019, Everdays closed a $12 Million Series A funding round, bringing its valuation to nearly $100 Million.

## The Registered Everdays Marks

21.     Everdays has sought U.S. and Canadian trademark protection for ancillary funeral and memorial related services.

22.     In particular, Everdays owns a number of U.S. Trademark Registrations for the mark EVERDAYS, including but not limited to the following:

| Mark | Reg. No. | Goods/Services | Mark Code | First Use in Commerce |
|------|----------|----------------|-----------|-----------------------|
| Everdays | 5,394,550 | Class 41: Providing a website featuring blogs and non-downloadable publications in the nature of messages, articles and event notifications in the field of life events, funerals and memorials; providing information in the field of life events in the nature of planning, organizing, hosting, arranging, and conducting of social entertainment events, parties, baby shower parties, anniversary parties, wedding receptions, birthday parties, and engagement parties. | (3) Design Plus Words, Letters, and/or Numbers | 2/20/2017 |

7

| Mark | Reg. No. | Goods/Services | Mark Code | First Use in Commerce |
|---|---|---|---|---|
| EVERDAYS | 5,394,549 | Class 41: Providing a website featuring blogs and non-downloadable publications in the nature of messages, articles and event notifications in the field of life events, funerals and memorials; providing information in the field of life events in the nature of planning, organizing, hosting, arranging, and conducting of social entertainment events, parties, baby shower parties, anniversary parties, wedding receptions, birthday parties, and engagement parties. | (4) Standard Character Mark | 2/20/2017 |
|  Everdays | 5,354,075 | Class 9: Computer application software and downloadable software in the nature of a mobile application for notifying friends, family and community when a loved one passes away; computer application software and downloadable software in the nature of a mobile application for creating, | (3) Design Plus Words, Letters, and/or Numbers | 2/20/2017 |

| Mark | Reg. No. | Goods/Services | Mark Code | First Use in Commerce |
|---|---|---|---|---|
| | | customizing, editing and sharing of visual, audio and data content, text, information, videos, pictures, gifs, event details, private messages, and contacts; computer application software and downloadable software in the nature of a mobile application for providing links to funeral home and memorial service providers and for integrating with funeral arrangement software. | | |
|  Everdays | 5,323,118 | Class 38: Providing internet chat rooms; providing chat room services for social networking; computer services, namely, providing on-line facilities for real-time interaction with other computer users concerning funerals, memorials and condolence messages. | (3) Design Plus Words, Letters, and/or Numbers | 2/20/2017 |
| EVERDAYS | 5,323,117 | Class 42: Software as a service (SAAS) services featuring software for use for creating, customizing, editing and | (4) Standard Character Mark | 2/20/2017 |

9

| Mark | Reg. No. | Goods/Services | Mark Code | First Use in Commerce |
|---|---|---|---|---|
| | | sharing of visual, audio and data content, text, information, videos, pictures, gifs, event details, private messages, and contacts, and for providing links to funeral home and memorial service providers, and for integrating with funeral arrangement software; Platform as a service (PAAS) featuring computer software platforms for creating, customizing, editing and sharing of visual, audio and data content, text, information, videos, pictures, event details, private messages, and contacts, and for providing links to funeral home and memorial service providers and for integrating with funeral arrangement software; providing a website featuring online, non-downloadable software for creating, customizing, editing and sharing of visual, audio and data content, text, information, videos, | | |

| Mark | Reg. No. | Goods/Services | Mark Code | First Use in Commerce |
|---|---|---|---|---|
| | | pictures, gifs, event details, private messages, and contacts, and for providing links to funeral home and memorial service providers, and for integrating with funeral arrangement software. | | |
| EVERDAYS | 5,323,116 | Class 38: Providing internet chat rooms; providing chat room services for social networking; computer services, namely, providing on-line facilities for real-time interaction with other computer users concerning funerals, memorials and condolence messages. | (4) Standard Character Mark | 2/20/2017 |
|  | 5,316,286 | Class 45: Online social networking services for notifying friends, family and community when a loved one passes away; online social networking services. | (3) Design Plus Words, Letters, and/or Numbers | 2/20/2017 |
|  | 5,316,285 | Class 42: Software as a service (SAAS) services featuring software for use for creating, customizing, editing and | (3) Design Plus Words, Letters, and/or Numbers | 2/20/2017 |

11

| Mark | Reg. No. | Goods/Services | Mark Code | First Use in Commerce |
|------|----------|----------------|-----------|------------------------|
|  |  | sharing of visual, audio and data content, text, information, videos, pictures, gifs, event details, private messages, and contacts, and for providing links to funeral home and memorial service providers, and for integrating with funeral arrangement software; Platform as a service (PAAS) featuring computer software platforms for creating, customizing, editing and sharing of visual, audio and data content, text, information, videos, pictures, event details, private messages, and contacts, and for providing links to funeral home and memorial service providers and for integrating with funeral arrangement software; providing a website featuring online, non-downloadable software for creating, customizing, editing and sharing of visual, audio and data content, text, information, videos, |  |  |

| Mark | Reg. No. | Goods/Services | Mark Code | First Use in Commerce |
|---|---|---|---|---|
| | | pictures, gifs, event details, private messages, and contacts, and for providing links to funeral home and memorial service providers, and for integrating with funeral arrangement software. | | |
|  Everdays | 5,316,284 | Class 35: Marketing, advertising, and promotional services; marketing research and marketing consulting services; marketing, advertising and promotional services, namely, promoting the goods and services of others in the field of funerals, memorials and condolence messages. | (3) Design Plus Words, Letters, and/or Numbers | 2/20/2017 |
| EVERDAYS | 5,316,283 | Class 45: Online social networking services for notifying friends, family and community when a loved one passes away; online social networking services. | (4) Standard Character Mark | 2/20/2017 |
| EVERDAYS | 5,316,281 | Class 35: Marketing, advertising, and promotional services; marketing | (4) Standard Character Mark | 2/20/2017 |

| Mark | Reg. No. | Goods/Services | Mark Code | First Use in Commerce |
|------|----------|----------------|-----------|----------------------|
| | | research and marketing consulting services; marketing, advertising and promotional services, namely, promoting the goods and services of others in the field of funerals, memorials and condolence messages. | | |
| EVERDAYS | 5,316,280 | Class 9: Computer application software and downloadable software in the nature of a mobile application for notifying friends, family and community when a loved one passes away; computer application software and downloadable software in the nature of a mobile application for creating, customizing, editing and sharing of visual, audio and data content, text, information, videos, pictures, gifs, event details, private messages, and contacts; computer application software and downloadable software in the nature of a mobile application for providing links to funeral home | (4) Standard Character Mark | 2/20/2017 |

| Mark | Reg. No. | Goods/Services | Mark Code | First Use in Commerce |
|---|---|---|---|---|
| | | and memorial service providers and for integrating with funeral arrangement software. | | |

23.    These federal registrations are collectively referred to as the "Everdays Marks."

24.    The Everdays Marks are in use, are valid and subsisting, are distinctive, and are in full force and effect.

25.    Since February 20, 2017, Everdays has used and is using the marks that are the subject of U.S. Trademark Registration Nos. 5,394,550, 5,394,549, 5,354,075, 5,323,118, 5,323,117, 5,323,116, 5,316,286, 5,316,285, 5,316,284, 5,316,283, 5,316,281, and 5,316,280 in interstate commerce in connection with the services described in those registrations.

26.    True and accurate copies of the Certificates of Registration for the Everdays Marks are attached hereto as **Exhibit A.**

27.    Everdays has had extensive, continuous, and widespread use of the Everdays Marks since February 2017, and the Everdays' Marks are well-known and identify significant goodwill.

<u>**Use and Recognition of the Everdays Marks**</u>

28.    Since February 2017, Everdays has offered ancillary funeral and

15

memorial related services under the Everdays Marks across the United States, including in Michigan.

29.     Everdays has expended considerable time, money, and effort to create and maintain the reputation, recognition, and goodwill associated with the Everdays Marks and with the services offered under the Everdays Marks.  For example, Everdays has invested in advertising and promoting its services under the Everdays Marks in the United States and elsewhere.  Everdays' advertising and promotional efforts include, but are not been limited to industry events, conferences, local and national trade shows, the internet, social media, and print media.  Everdays has spent a significant sum of money to advertise on Facebook, Instagram, Twitter, Linkedin, the App Store, and Google Store.  Everdays has also spent substantial advertising dollars in trade magazines, and has been featured in magazines such as Funeral Service Insider and FMM Media's Funeral Business Advisor.  Everdays has also sponsored various events as a means of generating additional publicity.

30.     Further, the Everdays Marks are widely recognized by consumers, and have acquired significant goodwill as trademarks identifying high quality and reliable services.

31.     Everdays' success has led to articles in high profile publications including: TNW, VentureBeat, USA Today, Cnet, Business Insider, Startup

Nation, dbusiness, and Crain's Detroit Business.  These articles are compiled at **Exhibit B.**

32.   As a result of Everdays' advertising and promotion of its services under the Everdays Marks, Everdays has built up, and now owns, valuable goodwill that is represented by the Everdays Marks.

33.   As a result of Everdays' high quality services and as a result of the continuous and extensive advertising, promotion, and performance of the ancillary funeral and memorial related services under the Everdays Marks, the Everdays Marks have acquired substantial value and recognition in the United States.

### Everhere's Unlawful Appropriation of the Everdays Marks

34.   Based on information and belief, Everhere Inc. was incorporated in Canada on February 19, 2018 as "10638706 CANADA INC." **Exhibit C.**

35.   Defendant Everhere assumed the name Everhere Inc. on August 2, 2018. ***Id.***

36.   Defendant Everhere is using the domain name and publishing content on "www.everhere.com."

37.   The ICANN WHOIS database lists the registrant of "www.everhere.com" as Domains by Proxy, LLC.  **Exhibit D.**  However, Domains by Proxy, LLC is a private registration service.  **Exhibit E.**  On information and belief, "www.everhere.com" is registered to Defendant Everhere.

17

38.     Defendant Everhere refers to itself as "Everhere":

## About us



⊗ **Share**

Everhere is a funeral organization that fundamentally believes it is time to reinvent the experience of the harsh reality of a loved one's death.

Reinventing death care through :

- Direct access to new and useful information online
- Immediate, safe, face-to-face accompaniment by accredited ambassadors
- Unlimited choices without pressure or judgment
- Fair costs
- Easy to use services with professional support
- A creative team available to organize funeral services and events representative of your deceased loved one

*See* https://www.everhere.com/us/about-us.

39.     Based on information and belief, Defendant Everhere advertises, promotes, offers, and provides ancillary funeral and memorial related services.

40.     Based on information and belief, Defendant Everhere's services include, but are not limited to, the use of a web-based software platform to provide users with the ability to create an announcement of a loved one's death in order to notify family, friends, and the community.

18



### Create a personalized obituary

Rather than sharing simply a standard death notice, create a personalized obituary of your loved one with custom texts, pictures and videos, which you can change and update as time passes.



### Spread the news

Use this personalized obituary to spread the news of your loved one's passing to family members, friends and acquaintances around the world.



### Receive donations

Everhere gives grieving families donations, either from donations collected from other family members, friends, colleagues and acquaintances or through their purchases of sympathy products. These donations continue even after the obituaries become memorials.

**Create the obituary of your loved one →**

*See* https://www.everhere.com/us/why-create-an-obituary.

41.     Defendant Everhere markets its services as an alternative to traditional obituaries.  *See id.*

42.     In addition to promoting obituaries, Defendant Everhere sells memorial-themed products such as candles, sympathy cards, trees, and memorial jewelry that family and friends of the deceased can purchase, with all of the revenues going to Defendant.

19



*See* https://www.everhere.com/us/memorial-shop.

43.   Defendant Everhere also advertises and promotes its services to funeral homes as a tool to assist grieving clients.   *See* https://www.everhere.com/us/funeral-homes-united-states.



*See, e.g.*, https://www.everhere.com/us/become-partner-funeral-home-27050.

44.     Defendant Everhere also maintains a blog that discusses subjects funeral planning and funeral customs.  *See* https://www.everhere.com/us/blog.

45.     Based on information and belief, Defendant Everhere advertises, promotes, offers, and provides its ancillary funeral and memorial related services across the United States, including in Michigan.

46.     Based on information and belief, Defendant Everhere advertises, promotes, offers, and provides its funeral and memorial related services to many of the same customers and consumers as Everdays.

### Everhere's Negative Reputation

47.      Based on information and belief, Everhere was founded by Pascal Leclerc.

48.     Based on information and belief, Mr. Leclerc is also the founder of Afterlife Network Inc. (o/a Afterlife.co) ("Afterlife"), another corporation organized under Canadian laws.

49.     On May 1, 2019, a Canadian federal court found that Afterlife violated Canadian copyright law by using computer aided scraping methods to steal third parties' obituaries, passing them off as its own.  Afterlife used these obituaries to sell memorial-themed products such as flowers, candles, and sympathy cards that family and friends of the deceased could purchase, but with all

of the revenues going to Afterlife. **Exhibits F & G.**

50.     Describing its conduct as "obituary piracy," the Canadian federal court ordered Afterlife to pay $20 million dollars in damages, and issued an injunction against the Afterlife website preventing it from operating in the future. *Id.*

51.     As a result of its conduct, Afterlife and its founder, Pascal Leclerc, who is also the founder of Everhere, have received significant negative media attention. **Exhibits H & I.**

52.     On information and belief, Mr. Leclerc founded Everhere in reaction to the Canadian lawsuit in order to work-around the Canadian injunction and continue operating, posting obituaries without the permission of families and selling flowers, jewelry, and related sympathy gifts, in order to generate profits for Everhere.

53.     On information and belief, Defendant Everhere is using computer aided scraping methods to steal obituaries developed by grieving families posted on funeral home sites for its own unauthorized use.

54.     Like Afterlife, Defendant Everhere has received significant negative media attention for its practices.

55.     Illustratively, following a bus crash that killed 16 members of the Humboldt Broncos junior hockey team in Saskatchewan, Canada, some families

22

accused Defendant Everhere of posting obituaries of their deceased loved ones without permission. **Exhibit J.**

56.    Defendant Everhere has been repeatedly accused of engaging in these practices. For instance, in July 2018, a Calgary family discovered an obituary for their late father on the Everhere website, which Everhere did not have permission to reproduce. **Exhibit K.** This is but one of many examples of families who have complained about Everhere's unauthorized reproduction and publication of obituaries.

## The Impact of Everhere's Infringement

57.    In or around April 2018, Everdays learned that Defendant Everhere was using the infringing name EVERHERE and the infringing domain www.everhere.com, to advertise, promote, offer, and provide its funeral and memorial related services to individuals and funeral homes.

58.    Based on information and belief, Defendant Everhere selected the new brand – Everhere – after the initial Canadian lawsuit was filed to continue operations and because of its similarity in sound, appearance, connotation, and commercial impression to the Everdays Marks, thus trading on Everdays' success and outstanding reputation in the industry.

59.    Based on information and belief, Defendant Everhere is attempting to appropriate for itself the goodwill associated with Everdays' provision of high

23

quality ancillary funeral and memorial services.

60.    On May 3, 2018, Everdays sent Pascal Leclerc (Everhere's CEO) a cease and desist letter in which it demanded that Everhere cease using the name "EVER" or any other confusingly similar variations as part of any trademark, trade name, domain name, or other designation, including but not limited to EVERHERE and the www.everhere.com website.  Everdays also demanded that Defendant Everhere transfer the www.everhere.com domain to Everdays.  **Exhibit L.**

61.    Three weeks later—on May 24, 2018—Everdays sent Mr. Leclerc a follow-up letter enclosing the original cease and desist correspondence.  **Exhibit M.**

62.    Both letters were delivered to Mr. Leclerc's last known address.  **Exhibits L and M.**

63.    Mr. Leclerc did not respond to either letter.

64.    Since Plaintiff Everdays sent these cease and desist letters, it has become aware of numerous instances of actual confusion, in the United States and Canada, involving Everdays and Defendant Everhere.

65.    Defendant Everhere's willful and intentional conduct has resulted in instances of actual confusion involving Plaintiff Everdays' actual clients and users, such as those described below in paragraphs 66-78.

66.    On or around September 4, 2018, the Tubman Funeral Home in Ottawa, Canada received a complaint from a family that was unhappy with an obituary containing inaccurate and "distorted" information.    The link to the obituary was as follows: https://www.everhere.com/ca/obituary-kars-andrew-david-schouten-7942257.

67.    Despite the link referencing Defendant Everhere, Tubman funeral home believed the link was from Everdays, and its general manager conveyed the family's complaints to Everdays.

68.    Everdays informed Tubman that the link was to an obituary on Everhere's webpage.    Tubman then informed Everdays that it had similar issues with Afterlife—also run by Mr. Pascal Leclerc—in the past.

69.    On or around November 17, 2018, Everdays received an email from the Pettus-Rowland funeral home in Paducah, Kentucky, which asked Everdays to respond right away, because an obituary mistakenly showed that the funeral home's owner had passed away.

70.    Pettus-Rowland funeral home believed that the errant obituary was associated with Everdays when in actuality, it was on Defendant Everhere's website.    Upon review, Everdays discovered that Everhere had not one but two fake obituaries for the funeral home owner on the Everhere website.

71.    On February 7, 2019, Everdays sent an internal email documenting

two additional instances of customer confusion.

72.     Around Early February 2019, a representative of Everdays met with a representative of the E.F. Boyd Funeral Home in Cleveland, Ohio.  During their meeting, the representative of E.F. Boyd Funeral Home inquired about Everhere, thinking that Everdays was the same company.  The representative informed Everdays that she had received many negative comments about Everhere.

73.     Everdays corrected the E.F. Boyd Funeral Home's misunderstanding, but, if Everdays had not had this opportunity, the E.F. Boyd Funeral Home would have persisted in its belief that Everdays and Defendant Everhere were the same company and thus believed that Everdays was in fact a disreputable company.

74.     On or around February 6, 2019, a representative of Everdays spoke with a representative of the Affinity Memorial Chapel in Columbus, Ohio.  That representative informed Everdays that she'd heard to "be leery of Everdays because (she paraphrased) they will put your message out, but when a viewer goes to buy flowers, they will send them to a competitor site."

75.     Everdays does not direct viewers to a competitor's website to buy flowers.  On information and belief, Affinity Memorial Chapel's representative confused Everdays with Defendant Everhere.

76.     Recently, on or around May 15, 2019, the Michigan Funeral Directors Association (MFDA) issued a bulletin in which they informed Michigan funeral

home directors that they believe Defendant Everhere is "scraping" obituaries from funeral home websites and altering them to avoid copyright claims before posting them on the Everhere website.

77.    In response to this bulletin, a representative of the Marshall Funeral Home in Greenville, Michigan informed Everdays that he believed the MFDA bulletin was referring to Everdays.

78.    On August 11, 2019, Everdays received a text message from a representative of a funeral home in Clarksville, Virginia.  That representative asked Everdays if it was associated with Everhere.com because a family that the Watkins Cooper Lyon funeral home was serving received notifications from Everhere containing incorrect information in the postings.

79.    Based on information and belief, Defendant Everhere willfully and deliberately incorporated "Ever" into its name with the specific intent to trade on the goodwill associated with the Everdays Marks and in order to cause confusion in the marketplace as to the origin and/or source of its services.

80.    Defendant Everhere's actions are particularly damaging to Everdays' business reputation because of the negative media attention Everhere and its owner have received as a result of their business practices.

81.    Defendant's use of the Everdays Marks is causing, and unless restrained, will continue to cause damage and irreparable harm to Everdays and its

valuable reputation and goodwill.

## COUNT I
## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

82.    Everdays repeats and realleges the allegations made above.

83.    Defendant Everhere is using a mark that is confusingly similar to the Everdays Marks. The mark EVERHERE is comprised of the same dominant element, i.e. the word "Ever," and has a similar sound, connotation and commercial impression as the Everdays Marks.

84.    In addition, the mark EVERHERE and the domain www.everhere.com are used in connection with the sale, offering for sale, and provision of ancillary funeral and memorial related services, which are the same services offered under the Everdays Marks.

85.    Defendant Everhere's use of the Everdays Marks in connection with the sale, offering for sale, and provision of ancillary funeral and memorial related services, is likely to cause confusion, or to cause mistake, or to deceive consumers as to the source, origin, affiliation, connection, or association of Everhere's ancillary funeral and memorial related services, such that purchasers or consumers may believe that Everhere's services originate from, or are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with Everdays, and which accordingly constitutes infringement of the Registered

28

Everdays Marks.

86.     As a result of Defendant Everhere's acts, the purchasing public is likely to believe that Everhere's ancillary funeral and memorial related services are Everdays' services, that Everhere is authorized by Everdays to sell Everdays' ancillary funeral and memorial related services, that consumers are purchasing or using Everdays' ancillary funeral and memorial related services when they are actually purchasing or using Everhere's services and/or that Everhere's services originate from, or are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with, Everdays.

87.     In fact, instances of actual confusion among consumers have already occurred.

88.     Defendant Everhere's acts constitute trademark infringement under 15 U.S.C. § 1114.

89.     Defendant Everhere's acts have caused and, if allowed to continue, will continue to cause Everdays to suffer substantial irreparable harm for which Everdays has no adequate remedy at law.  Everdays is entitled to an award of damages and injunctive relief under 15 U.S.C. § 1116.

90.     Everdays has suffered actual damages and Defendant Everhere has been unjustly enriched.

91.     On information and belief, Defendant Everhere's actions have been

willful, deliberate and in bad faith, entitling Everdays to treble damages, attorneys' fees and costs of suit under 15 U.S.C. §§ 1117(a) and (b), and to such other and further relief as the Court shall deem appropriate in the circumstances.

## COUNT II
## TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. §1125(a)(1)(A)

92.    Everdays repeats and realleges the allegations made above.

93.    Defendant Everhere's unauthorized use of the EVERHERE mark on and in connection with ancillary funeral and memorial related services is likely to cause confusion, or to cause mistake, or to deceive consumers as to the source, origin, affiliation, connection, or association of the Everhere ancillary funeral and memorial related services, such that consumers may believe that Everhere's services are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with, Everdays, and which accordingly constitutes infringement of the Everdays Marks.

94.    On information and belief, Defendant Everhere's actions have been willful, deliberate and in bad faith for the purposes of deceiving buyers into purchasing or using Everhere's ancillary funeral and memorial related services falsely believing that such services are sourced by, originate from, or are affiliated, connected or associated with Everdays, and with the specific intent to appropriate

30

to Everhere and to employ for its own benefit, the valuable goodwill and business reputation represented by the Everdays Marks.

95.     Defendant Everhere's acts constitute trademark infringement, false designation of origin, and unfair competition in violation of Lanham Act § 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A).

96.     Defendant Everhere's acts have caused and, if allowed to continue, will continue to cause Everdays to suffer substantial irreparable harm for which Everdays has no adequate remedy at law.

97.     In addition, as a result of the foregoing, Everdays has suffered actual damages and Defendant Everhere has been unjustly enriched by receiving substantial revenues and substantial profits as a result of the infringement.

98.     On information and belief, Defendant Everhere's actions have been willful, deliberate and in bad faith, entitling Everdays to treble damages, attorneys' fees and costs of suit, pursuant to 15 U.S.C. § 1117(a) and (b), and to such other and further relief as the Court shall deem appropriate in the circumstances.

## COUNT III
## FEDERAL CYBERPIRACY UNDER 15 U.S.C. § 1125(d)

99.     The allegations of the foregoing paragraphs are incorporated herein by reference.

100.    Defendant Everhere registered, trafficked in, and/or used (and

31

continues to use) the Everdays Marks in the domain www.everhere.com and has done so with a bad faith intent to profit from the distinctive Everdays Marks.

101.   On information and belief, Defendant Everhere has a bad faith intent to profit from the registration and use of the domain name www.everhere.com by creating an association with the Everdays Marks.

102.   Defendant's unauthorized registration and use of the domain www.everhere.com constitutes cyberpiracy and violates Everdays' rights under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

103.   Everdays took action to address these violations as soon as it became aware of Defendant Everhere's infringing and tarnishing uses of the Everdays Marks as a part of the domain www.everhere.com.  Defendant Everhere has in no way been prejudiced by the timing of this action.

104.   On information and belief, Defendant Everhere's unlawful conduct has been and continues to be willful, deliberate and in bad faith, and Defendant Everhere neither believed nor had reasonable grounds to believe that its use of the domain www.everhere.com is a fair use or otherwise lawful.

105.   Defendant Everhere's acts have irreparably damaged Everdays, and it has no adequate remedy at law.   Unless enjoined, Defendant Everhere will continue to use the Everdays Marks and will continue to use and traffic in the domain name www.everhere.com and/or similar domain names, further injuring

Everdays and the public.

## COUNT IV
## TRADEMARK INFRINGMENT AND UNFAIR COMPETITION
## <u>UNDER MICHIGAN COMMON LAW</u>

106.   Everdays incorporates and reasserts each of the preceding paragraphs herein.

107.   Defendant Everhere's unauthorized use of the confusingly similar mark EVERHERE constitutes trademark infringement, misappropriation of Everdays' goodwill, and unfair competition under state common law by reason of which Everdays has suffered, and will continue to suffer irreparable injury to its trade, business reputation, prestige and goodwill.

108.   On information and belief, Defendant Everhere's actions have been willful, deliberate and in bad faith for the purposes of deceiving buyers into purchasing or using Everhere's ancillary funeral and memorial related services, falsely believing that such services are sourced by, originate from, or are affiliated, connected or associated with Everdays, and with the specific intent to appropriate to Everhere and to employ for its own benefit, the valuable goodwill and business reputation represented by the Everdays Marks.

109.   Everdays has been, and continues to be, irreparably damaged by Defendant Everhere's infringement, and it has no adequate remedy at law.  Unless

Everhere is enjoined, Everhere's unauthorized use of the Everdays Marks will continue, further injuring Everdays and the public.

110. On information and belief, Defendant Everhere has received substantial revenues and substantial profits as a result of Everhere's unauthorized use of the Everdays Marks, to which Everhere is not entitled, and Everdays has also suffered damages as a result of Everhere's unauthorized use of the Everdays Marks, for which Everhere is responsible.

**COUNT V**
**MICHIGAN CONSUMER PROTECTION ACT – MCL 445.903(1)**

111. Everdays incorporates and reasserts each of the preceding paragraphs herein.

112. Defendant Everhere's use of the mark EVERHERE, without the authorization or consent of Everdays in connection with the sale, offering for sale, and provision of ancillary funeral and memorial related services, causes a probability of confusion or misunderstanding as to the source, sponsorship or approval of Everhere's services, such that grieving families and consumers may believe that Everhere's funeral and memorial related services are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with, Everdays.

113. Defendant Everhere's unauthorized use of the confusingly similar

mark EVERHERE in connection with providing ancillary funeral and memorial related services harms Everdays reputation because consumers will falsely believe that Everhere's services are provided by Everdays.

114.   Defendant Everhere's unauthorized use of the confusingly similar mark EVERHERE constitutes violations of MCL 445.903(1)(a), (c), (s), (bb) and (cc).

115.   Defendant Everhere's violations of MCL 445.903(1) have been willful, deliberate and in bad faith.

116.   Everdays is entitled to its reasonable attorneys' fees pursuant to MCL 445.911 as a result of Defendant Everhere's violation of the Michigan Consumer Protection Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Everdays prays for relief as follows:

a.     For a judgment determining that Defendant Everhere is liable to Everdays for federal trademark infringement under 15 U.S.C. § 1114;

b.     For a judgment determining that Defendant Everhere is liable to Everdays for federal unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A);

c.     For a judgment determining that Defendant Everhere is liable to Everdays for federal cyberpiracy in violation of 15 U.S.C. § 1125(d);

d.      For a judgment determining that Defendant Everhere is liable to Everdays for unfair competition under the common law of the State of Michigan;

e.      For a judgment determining that Defendant Everhere is liable to Everdays for violation of the Michigan Consumer Protection Act, MCL 445.903(1);

f.      For a judgment declaring that Defendant Everhere's trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a), federal cyberpiracy under 15 U.S.C. § 1125(d), violation of the common laws of the State of Michigan, and violation of the Michigan Consumer Protection Act has been willful and deliberate;

g.      For a judgment awarding Everdays: (1) Defendant Everhere's profits; (2) damages sustained by Everdays; and (3) the cost of this action;

h.      For a judgment awarding Everdays treble Defendant Everhere's profits due to Defendant Everhere's willful and deliberate unfair competition;

i.      Order that Defendant Everhere transfer the domain name www.everhere.com to Everdays; and, if Everdays elects, order statutory damages to Everdays of $100,000 for Defendant Everhere's use of the domain www.everhere.com.

j.      For judgment declaring this case exceptional per 15 U.S.C. § 1117(a);

k.      For a judgment awarding Everdays its attorneys' fees;

36

l.   For a judgment awarding Everdays punitive damages as authorized by law;

m.   For an order preliminarily and permanently enjoining and restraining Defendant Everhere and its officers, directors, employees, agents and servants, and all those in active concert of participation with any of them, from using the Everdays Marks, or any colorable similar variants thereof; from engaging in unfair and deceptive trade practices; and from injuring Everdays' reputation pursuant to 15 U.S.C. § 1116;

n.   Award such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff Everdays respectfully requests a jury trial on all claims so triable.

Dated: August 20, 2019                    Respectfully submitted,

HONIGMAN LLP

By: /s/ Deborah J. Swedlow
Deborah J. Swedlow (P67844)
Anthony P. Acciaioli (P82028)
315 E. Eisenhower Parkway, Suite 100
Ann Arbor, MI 48108
Tel: (734) 418-4268
Fax: (734) 418-4269
bswedlow@honigman.com
aacciaioli@honigman.com
*Attorneys for Plaintiff*

37

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 20, 2019, my assistant electronically filed the foregoing paper with the Clerk of Court using the ECF system, which will send notification of such filing to all attorneys of record.

Dated:  August 20, 2019

By:  /s/ Deborah J. Swedlow
Deborah J. Swedlow (P67844)
HONIGMAN LLP
315 East Eisenhower Parkway
Suite 100
Ann Arbor, MI 48108-3330
(734) 418-4200
bswedlow@honigman.com

38